UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Cathleen D. Parker

| | |
|---|---|
| In re: ) | |
| ) | |
| BRET MATTHEW LAMPERES ) | Case No. 21-10516-CDP |
| ) | |
| Debtor. ) | |
| ) | Chapter 7 |
| ) | |
| ) | |
| _____ ) | |
| ) | |
| ANGELA MEAD, an individual; and MYLES ) | |
| MEAD, an individual, ) | Adversary Proc. No. |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| BRET M. LAMPERES, an individual, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE**

Plaintiffs, Angela and Myles Mead (the "Plaintiffs"), by and through counsel Berg Hill Greenleaf Ruscitti LLP, hereby submit this complaint (the "Complaint") objecting to the discharge of Bret Matthew Lamperes (the "Defendant"), pursuant to Sections 523(a)(2) and 727(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4004, and hereby complain and allege against Defendant as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs Angela and Myles Mead (collectively, "Plaintiffs") are married individuals who reside at 5515 Evangeline Drive, Windsor, Colorado 80550.

2. Upon information and belief, Defendant Bret M. Lamperes ("Lamperes" or "Debtor") is an individual who resides at 748 Mountain Avenue, Berthoud, Colorado 80513.

1

3. Joli A. Lofstedt is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Trustee").

4. This Court has jurisdiction over the above-captioned Chapter 7 bankruptcy case (the "Chapter 7 Case") and this adversary proceeding (the "Adversary Proceeding") pursuant to 28 U.S.C. §§ 157, 1331, and 1334(b), 11 U.S.C. §§ 523 and 727, and F.R.B.P. 7001(4).

5. This Adversary Proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J) and arises in and is related to the Chapter 7 Case.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) because the Chapter 7 Case was filed in this District and is pending before this Court.

## GENERAL ALLEGATIONS

7. In or around 2010, Plaintiffs became acquainted with Debtor when he represented Plaintiffs as a buyers' agent in connection with the purchase of their home.

8. At all relevant times, Debtor was a licensed real estate broker in the State of Colorado.

9. Debtor is a member and manager of Investments of Windsor LLC, a Colorado limited liability company ("**IOW**") with a registered place of business at P.O. Box 1304, Berthoud, Colorado 80513, and a registered agent address located at 748 Mountain Avenue, Berthoud, Colorado 80513.

10. The only other member and manager of IOW is Joseph R. Shrader ("Shrader"), an individual who resides, upon information and belief, at 8510 Bruns Drive, Fort Collins, Colorado 80525.

11. In or around February 2017, Debtor approached Plaintiffs and encouraged them to invest in a unit (the "**Condo Unit**") in a residential condominium community development planned for the Grasslands Park Subdivision ("the "**Property**").

12. IOW was the developer of the residential condominium community development (the "**Project**").

13. Debtor recommended that Plaintiffs structure the purchase of their Condo Unit as a $100,000.00 loan to Defendant IOW, which would be repaid by delivery of title to the Condo Unit (the "**Loan**").

2

14. Debtor represented to the Plaintiffs that he would protect their interests in the transaction and prepare all documentation necessary to protect their interests in the transaction, including real estate documents to memorialize the transaction and Plaintiffs' security interest in the land being developed.

15. Debtor acted as a transaction broker in connection with the transaction.

16. Debtor, on behalf of IOW, provided Plaintiffs with documents regarding the viability of the Project including, without limitation, an email dated March 16, 2017, regarding IOW's proof of funds for the Project.

17. On or about March 17, 2017, with the assistance of Debtor, Plaintiffs and IOW entered into a contract memorializing the Loan and purchase transaction for the Condo Unit (the "**Contract**"). The Contract is attached hereto as Exhibit A.

18. The Contract was executed on behalf of Plaintiffs by Mr. Mead.

19. The Contract was executed on behalf of IOW by Debtor.

20. The terms of the Contract included the following:

   a. Plaintiffs provided the Loan funds to IOW;

   b. the Loan would be evidenced by a promissory note and secured by a deed of trust recorded by IOW or Lamperes or both;

   c. the deed of trust securing repayment of the Loan would be recorded second in priority to a construction loan (the "**Construction Loan**") secured by the Property;

   d. the Property's appraised value of $700,000.00 would be sufficient to secure the Loan; and

   e. the Loan would be repaid in full by IOW through IOW's transferring to Plaintiffs clear title to the Condo Unit, which was to be a condominium unit in the second building of the Project.

21. Plaintiffs relied on Debtor's representations that all the necessary documents had been prepared and executed to protect their interests and would be recorded as promised.

22. However, Debtor negligently or intentionally failed to provide a promissory note and deed of trust to Plaintiffs, which were meant to provide security to Plaintiffs for repayment of the Loan by acquisition of the Condo Unit.

23. Despite the representation by Debtor that the deed of trust securing repayment of the Loan would be second in priority only to the Construction Loan, IOW subsequently obtained loans in the amounts of $1,162,000.00 and $300,000.00, respectively, that were secured by deeds of trust (collectively, the "**Prior Liens**").

24. Debtor and Shrader signed each of the Prior Liens as a "managing member" of IOW.

25. Debtor failed to notify Plaintiffs of the existence and amount of the Prior Liens even though they collectively exceeded the $700,000.00 security value pledged in the Contract and by Debtor.

26. Debtor and IOW encumbered the Property with several additional interests and debts without Plaintiffs' knowledge or consent.

27. The additional interests and debts are as follows:

   a. Option Agreement dated August 17, 2017, by and between IOW and Clear Sun Investments LLC, recorded in the real property records of the Weld County Clerk and Recorder on October 30, 2017, at Reception No. 4348047;

   b. Amended Deed of Trust dated October 27, 2017, and recorded in the real property records of the Weld County Clerk and Recorder on November 1, 2017, at Reception No. 4348728, by which IOW increased the amount of the first lien from $1,162,000.00 to $1,441,209.00;

   c. Amended Deed of Trust dated March 23, 2018, and recorded in the real property records of the Weld County Clerk and Recorder on March 26, 2018, at Reception No. 4385591, by which IOW increased the amount of the first lien from $1,441,209.00 to $1,485,000.00;

   d. Amended Deed of Trust dated May 3, 2018, and recorded in the real property records of the Weld County Clerk and Recorder on May 4, 2018, at Reception No. 4396157, by which IOW increased the amount of the first

lien from $1,485,000.00 to $1,570,000.00 (collectively, the "**Other Encumbrances**").

28. At no time did Debtor record Plaintiffs' security interest in the Property as promised in the Contract.

29. In 2018, the first condominium building in the Project was complete.

30. Debtor represented to Plaintiffs that their Condo Unit would also be completed in 2018.

31. The Condo Unit was not completed in 2018.

32. Debtor represented to Plaintiffs that the Project was delayed, in part, due to a restructuring of IOW and issues in obtaining Project approvals from the city.

33. Debtor continually assured Plaintiffs that construction of the Project was proceeding and the Condo Unit would be completed soon.

34. Then, despite having known for several months that another lender had initiated foreclosure proceedings against the Property, Debtor suddenly informed Plaintiffs in late Spring of 2020 that the Property was subject to imminent foreclosure.

35. The promised deed of trust, second in priority, having not been created or recorded by Debtor, Plaintiffs were unable to assert their security interest in the Property during foreclosure.

36. Thereafter, Plaintiffs became aware of an investigation by the Colorado Real Estate Commission into Debtor's actions with respect to the Project (the "**Investigation**").

37. During the Investigation, Debtor admitted to, among others, the following facts:

   a. $409,000.00 of IOW's funds were transferred to Debtor's business and personal joint checking accounts;

   b. $321,000.00 of IOW's funds were transferred to Shrader, including approximately $153,000.00, which Shrader used to purchase a personal residence;

   c. Debtor used IOW funds to repay personal loans, including a $15,000.00 check written to Debtor's wife's clothing store, commission checks to brokers representing investors in the Project, personal expenses, vacations,

5

and checks for earnest money deposits on properties that Lamperes was attempting to personally purchase.

38. Plaintiffs did not receive the Condo Unit as repayment for the Loan.

39. Plaintiffs did not otherwise receive repayment of the Loan from IOW or Debtor.

40. On February 1, 2021, Debtor filed this Chapter 7 Case.

41. On February 3, 2021, unaware of the Debtor's bankruptcy petition, Plaintiffs sued Debtor, Shrader, and IOW in Colorado state court for claims relating to the above allegations, including Negligence, Fraudulent Inducement, Fraudulent Misrepresentation, Civil Theft, Conversion, Breach of Contract, Unjust Enrichment, Promissory Estoppel, Alter Ego, and violation of the Colorado Consumer Protection Act. The state court case, which is Case No. 2021CV30072 in Weld County District Court, is subject to the automatic stay of this Chapter 7 Case and Debtor has not yet been served with a summons or complaint because of the automatic stay.

42. On February 26, 2021, Debtor filed his Statement of Financial Affairs in this Chapter 7 Case. In the schedules, Debtor lists Myles J. Mead as a Nonpriority Unsecured Creditor, to whom he owes a debt of $100,000.

43. On March 2, 2021, an arrest warrant was issued for Debtor by the Weld County District Attorney's Office, charging him with Felony Theft, Money Laundering, Filing a False Tax Return, and Tax Evasion for conduct related to other real estate and financial transactions that are substantially similar to the conduct described above and involve, at least in part, the same real estate development project.

44. On April 9, 2021, during the 341(a) Meeting of Creditors, Debtor stated under oath that he would never have put the Plaintiffs' security interest in the Property ahead of IOW's security interest – he always intended that the Construction Loan would have first priority and IOW would have second priority, contrary to the plain language of the Contract. Lamperes further admitted under oath that he never tendered a promissory note or recorded a deed of trust for Plaintiffs as promised in the Contract.

45. The Contract, which is attached as <u>Exhibit A</u>, promises that the Plaintiffs' security interest would be second only to the Construction Loan. Thus, Debtor's statement to the 341(a) Creditors confirms that Debtor misrepresented his intention <u>not</u> to provide or record a secured interest in the Property on behalf of Plaintiffs despite his representations and the plain language of the Contract to the contrary.

46. Debtor's misappropriations of Loan proceeds and IOW funds for personal use demonstrates that (a) IOW is an alter ego of Debtor; or (b) Debtor's representations to Plaintiffs that they were making a Loan to IOW and not Debtor personally was part and parcel of his fraudulent scheme to obtain the Loan proceeds for personal use.

**FIRST CAUSE OF ACTION**
**(Denial of Discharge – 11 USC § 523(a)(2)(A))**

47. Plaintiffs reallege and fully incorporate herein by reference all allegations contained in the preceding paragraphs.

48. Debtor induced Plaintiffs to enter into the Contract through false pretenses, false representations, or actual fraud.

49. Debtor represented to the Plaintiffs that he would protect their security interests in the transaction, prepare and deliver all documentation necessary to protect such interests, including the preparation and recording of the deed of trust securing second priority of the Loan against the Property.

50. Debtor failed to provide a promissory note or deed of trust to Plaintiffs, which were promised to document and secure to Plaintiffs the repayment of the Loan or acquisition of the Condo Unit.

51. Plaintiffs reasonably relied on Debtor's representations.

52. As a result of Debtor's false pretenses, false representations, and/or actual fraud, Plaintiff was damaged in an amount to be proven at trial.

53. Therefore, discharge of Plaintiffs' claim against Debtor should be denied pursuant to 11 U.S.C. § 523(a)(2) based on Debtor's having committing acts proscribed by 11 U.S.C. § 523(a)(2)(A).

**SECOND CAUSE OF ACTION**
**(Denial of Discharge – 11 USC § 523(a)(2)(B))**

54. Plaintiffs reallege and fully incorporate herein by reference all allegations contained in the preceding paragraphs.

55. Debtor obtained proceeds of the Loan through use of a written statement that was materially false respecting Debtor's financial condition, on which Plaintiffs relied, and that Debtor caused to be made with the intent to deceive.

56. The statements made by Debtor regarding financial conditions are statements that a party making the Loan would normally rely on in making a decision to loan funds, and, therefore, are material.

57. Plaintiffs reasonably relied on the statements of Debtor's financial condition.

58. Therefore, Debtor's discharge should be denied pursuant to 11 U.S.C. § 523(a)(2) as to Plaintiffs' claim, for Debtor having committed acts proscribed by 11 U.S.C. § 523(a)(2)(B).

### THIRD CAUSE OF ACTION
### (Request for Trustee Investigation – 11 USC § 727(c)(2))

59. Plaintiffs reallege and fully incorporate herein by reference all allegations contained in the preceding paragraphs.

60. Debtor was arrested on March 2, 2021, and charged with Felony Theft, Money Laundering, Filing a False Tax Return, and Tax Evasion for conduct related to real estate and financial transactions that are substantially similar to Debtor's conduct toward Plaintiffs.

61. Plaintiffs reasonably believe that Debtor's inducement of the Loan to Debtor's alter ego was part of the same scheme or plan that resulted in Debtor being charged with the foregoing crimes and asks that the Court order the Trustee pursuant to 11 U.S.C. § 727(c)(2) to examine the acts and conduct of the Debtor to determine whether a ground exists for denial of discharge.

WHEREFORE, Plaintiffs Myles and Angela Mead respectfully request an order directing the Trustee to investigate Debtor's conduct to determine whether a ground exists for denial of discharge, and further requests that the Court deny discharge of Plaintiffs' claim against Debtor on grounds that Debtor obtained the $100,000 loan at issue by false pretenses, false representations, and/or actual fraud.

Respectfully submitted this 12th day of April, 2021

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Patrick M. Haines*

_____

Patrick M. Haines, Colo. Bar. No. 38970
Elizabeth M. Froehlke, Colo. Bar No. 45800
1712 Pearl Street
Boulder, CO 80302
Phone: (303) 402-1600
Fax: (303) 402-1601
Email: pmh@bhgrlaw.com
Email: emf@bhgrlaw.com

*Attorneys for Angela and Myles Mead*